**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SKI AREA CONTAINMENT COALITION,

        Petitioner,

vs.                                No.  CV 99-1376 JP/RLP

NEW MEXICO STATE ENGINEER,

        Respondent,

and

UNITED STATES FOREST SERVICE,
SANTA FE NATIONAL FOREST, and
SANTA FE SKI COMPANY,

        Real Parties in Interest.


## <u>MEMORANDUM OPINION AND ORDER OF REMAND</u>

       This case was removed to federal court from the New Mexico State Court on

November 29, 1999 by the United States of America.  The United States filed a Motion

To Dismiss on December 6, 1999 (Doc. No. 5).  Respondent New Mexico State Engineer

filed a Motion to Remand on February 15, 2000 (Doc. No. 24).  Also pending is a Motion

to Quash filed in the state court by Santa Fe Ski Company prior to removal.  After

carefully considering the briefs, the pleadings, and the applicable law, I conclude that the

Motion to Remand should be GRANTED because this Court lacks removal jurisdiction.  I

will therefore remand the case to state court, where the remaining motions will be

decided.

## I.  BACKGROUND

This case involves a dispute about the New Mexico State Engineer's approval of return flow water credits for snow-making activities at the Santa Fe Ski Area, which is located in the Santa Fe National Forest.  In 1993 the Santa Fe Ski Company ("Ski Company") and the U.S.D.A. Forest Service, Santa Fe National Forest ("Federal Agency") filed joint applications with the New Mexico State Engineer ("State Engineer") to use water rights obtained by the Federal Agency from other water rights holders in the Rio En Medio water basin, in which the Santa Fe Ski Area is located.  The Ski Company leases land from the Federal Agency for its ski operations.  The applications sought to move irrigation water rights to the ski area, and to change the purpose of use from irrigation to snow making.

Petitioner Ski Area Containment Coalition ("SACC"), which has members who own water rights downstream from the ski area, protested the applications.  On May 9, 1996, after extensive hearings in which SACC participated, the State Engineer issued an order granting the Ski Company and the Federal Agency a "consumptive use" of 5.59 acre feet per year for snow making, and later allowed them a 50% return flow credit upon their filing of a return flow plan.  Thus, they were allowed to divert from the stream 11.18 acre feet per year, twice as much water as they were expected to consume, under the assumption that 50% of the water diverted would flow back into the Rio En Medio stream system.  The original irrigation rights enjoyed the same 50% return flow credit.

2

The applications had sought to divert 57.04 acre feet per year with a higher return flow credit of 90.2%, based on an assumption that only 9.8% of water diverted for snow making would be consumptively used and 90.2% would return to the stream system.  The State Engineer found that this higher rate of return "is dependent upon the Applicant providing actual proof of water being timely returned to the stream system," Pet. Ex. C ¶ 16, and ordered that the Ski Company and the Federal Agency could increase diversions under a return flow plan approved by him by:

> demonstrating the manner in which actual return flows to the Rio En Medio or its tributaries shall be measured to show that the amount of return flow from the entire diversion, less the amount herein authorized as consumptive use, will not result in increased depletions within the system and is actually and timely returned to the Rio En Medio or its tributaries.

Pet. Ex. C ¶ 1 at 5 and ¶ 1 at 6.

SACC received a copy of the May 9, 1996 order, and did not file an appeal.  Some three years later, on April 12, 1999 the State Engineer, citing a return flow plan filed by "the permittee . . . prepared by John Shomaker and Associates" on September 10, 1998, ordered that the return flow credit would be increased to 72%, and upped to 19.96 acre feet the amount of water allowed to be diverted annually for snow making purposes, subject to possible review and adjustment by the State Engineer some time in the next five years.  Pet. Ex. A.  A copy of the April 12 order was not served on SACC.

On October 26, 1999 SACC filed a Petition for Writ of Certiorari in the state court seeking review of the State Engineer's April 12, 1999 order.  SACC brought the action as

a writ of certiorari because SACC claims that it did not receive notice of the April 1999

order and thus was unable to appeal the decision within the 30-day time limit contained

in N.M. Stat. Ann. 1978 § 72-7-1 (Repl. Pamp. 1997).  SACC alleges that the issue of

return flow credits was hotly disputed during the hearings in 1996, and that any

overestimate of return flow reduces stream flow and impairs downstream water rights.  It

further alleges that by increasing the return flow credit for snow making without requiring

the Ski Company to provide actual proof of water being timely returned to the stream

system, and without notice, hearing, or opportunity to protest, the State Engineer violated

both the New Mexico water code and principles of due process under the state

constitution.

      The relief sought by SACC is to void the State Engineer's April 12, 1999 order.

Named in the petition for writ of certiorari as "real parties in interest" are the United

States Forest Service and the Santa Fe Ski Company.

      On November 29, 1999 the United States filed its notice of removal on behalf of

the Federal Agency.  The basis for removal is 28 U.S.C. § 1442(a)(1), which provides in

pertinent part:

> **Federal officers or agencies sued or prosecuted**
> (a) A civil action or criminal prosecution commenced in a
> State court against any of the following may be removed by
> them to the district court of the United States for the district
> and division embracing the place wherein it is pending:
>     (1) The United States or any agency thereof or any
> officer (or any person acting under that officer) of the United
> States or of any agency thereof, sued in an official or
> individual capacity for any act under color of such office . . . .

4

The State Engineer's remand motion is made under 28 U.S.C. § 1447(c), which provides in pertinent part:  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[1]

## II.  MOTION TO REMAND - DISCUSSION

 In its motion to remand, the State Engineer contends that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1442(a)(1) because the relief sought in the petition does not flow directly from any act by the Federal Agency.  The United States, as the removing party, bears the burden of establishing federal jurisdiction over the controversy. *See* Wilson v. Republic Iron & Steel, 257 U.S. 92, 97 (1921); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998).

The State Engineer argues that the relief sought, if granted, would operate only against the State Engineer, not against the Federal Agency or its lessee the Ski Company. The State Engineer also argues that no act or omission of any federal officer or agency is challenged in this case, only the State Engineer's approval of increased return flow credits for the Ski Company without giving notice to SACC.  Finally, the State Engineer argues that sovereign immunity is not a colorable defense under the circumstances of this case.

---

[1]  SACC takes no position on the propriety of the removal.

5

The United States responds that § 1442(a)(1) is to be broadly interpreted to favor subject matter jurisdiction.  Also, it argues that the act of applying for the increased return flow credits is challenged in this case, not just the State Engineer's approval of the credits. Finally, it argues that the outcome of this case could impair the Federal Agency's property right in water, making this a case against the United States' interests.

Until the statute was amended in 1996, federal agencies did not have the right under § 1442(a)(1) to remove a case brought against them in state court.  *See* International Primate Protection League v. Administrators of Tulane Educational Fund, 500 U.S. 72 (1991).  The 1996 amendment legislatively reversed the Supreme Court's 1991 decision by extending removal jurisdiction to actions against federal agencies as well as those against federal officers, but it did not change the requirements for removal under § 1442.

To qualify for removal, a federal officer or agency must (1) raise a colorable federal defense, *see* Mesa v. California, 489 U.S. 121, 129 (1989), and (2) establish that the suit is "for a[n] act under color of . . . office."  28 U.S.C. § 1442(a)(1).  In construing the colorable federal defense requirement, the Supreme Court has rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court."  Willingham v. Morgan, 395 U.S. 402, 407 (1969).  The second requirement is satisfied if the federal officer or agency shows a nexus, a "'causal connection' between the charged conduct and asserted official authority."  Willingham,

6

395 U.S. at 409 (*quoting* Maryland v. Soper (No. 1), 270 U.S. 9, 33 (1926). *See also*

O'Bryan v. Chandler, 496 F.2d 403, 412-13 (10th Cir. 1974) (case against federal judge

removable under § 1442(a)(3) for act under color of federal office).

I turn next to an analysis of the second requirement of a nexus between the claim

and the actions of the Federal Agency.  Here I find the nexus requirement lacking.

To be sure, if SACC were to prevail in its petition, the use of the federal water

right by the Ski Company would be impaired, at least temporarily.  The court might grant

the petition and remand the case to the State Engineer to rehear the matter.  *See* Eldorado

at Santa Fe, Inc. v. Cook, 113 N.M. 33, 37, 822 P.2d 672, 676 (Ct. App. 1991) (affirming

remand of case for new proceedings where state engineer's action void because of lack of

jurisdiction to grant application for change in well location without notice to affected

water users).  Upon reconsideration, the State Engineer might deny the increased return

flow credits.  But this is not the type of controversy for which § 1442(a)(1) was enacted.

The original purpose of § 1442(a)(1) was to protect federal officers against actions

brought against them which threatened personal liabilities or state penalties for acts

performed out of a duty to enforce federal law, or which might otherwise hamper them in

their enforcement of federal statutes.  *See* Willingham, 395 U.S. at 406-07; *see also*

Christensen v. Ward, 916 F.2d 1462, 1484 (10th Cir. 1990) ("The primary purpose for

7

the removal statute is to assure that defenses of official immunity applicable to federal

officers are litigated in federal court.").  The 1996 amendment did not expand this

purpose except to add the United States and federal agencies to the protected federal

parties eligible for removal, *see* S. Rep. No. 104-366 § 208, at 30 (1996), *reprinted in*

1996 U.S.C.C.A.N. 4202, 4210 (intent that questions concerning exercise of federal

authority, scope of federal immunity, and federal-state conflicts be adjudicated in federal

court).  Thus, a case in which a federal officer is prosecuted criminally or sued for civil

damages for an official act, or in which a federal officer or agency is threatened with

contempt sanctions for an official act or omission, now qualifies for removal.  *See, e.g.,*

Jefferson County, Alabama v. Acker, 527 U.S. 423, 119 S. Ct. 2069 (1999) (suit against

federal judges for collection of occupational tax); Willingham, 395 U.S. 402 (civil rights

damages action against federal prison officials); Christensen, 916 F.2d 1462 (suit for

damages against IRS and DOJ employees for wrongful assessment and collection of

federal tax); O'Bryan v. Chandler, 496 F.2d 403 (10th Cir. 1974) (action for libel against

federal judge); State of Nebraska, ex rel., Dep't of Social Servs. v. Bentson, 146 F.3d 676

(9th Cir. 1998) (contempt action against IRS); Florida v. Cohen, 887 F.2d 1451 (11th Cir.

1989) (contempt proceedings against federal agents); Bermudez v. United States Dep't of

Housing and Urban Dev., 84 F. Supp. 2d 1094 (C.D. Cal. 2000) (suit against HUD for

failure to return earnest money deposit); State Engineer of the State of Nevada v. South

Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada, 66 F. Supp. 2d

1163 (D. Nev. 1999) (contempt petition against Indian tribe and United States of America

8

for violation of water rights decree); <u>Refvem v. Mirch</u>, 1999 WL 183621 (N.D. Cal.

1999) (third-party complaint for indemnity and contribution from US); <u>Porter v. Rathe</u>,

1998 WL 355499 (D. Or. 1998) (adverse possession claim against US); <u>Clark v. United

States</u>, 1997 WL 732611 (D. Alaska 1997) (action against US and IRS to void tax lien

and quiet title to property).

      But in those situations that do not impact such federal interests, removal is not

proper.  It is not enough that a federal property interest is involved if a federal officer or

agency is not accused of wrongdoing or threatened with a state-imposed penalty.  *See,*

*e.g.,* <u>Turner v. Rubin</u>, 863 F. Supp. 1198, 1203 (D. Haw. 1994) (third-party complaint

against secretary of USDA not removable because it does not allege he acted unlawfully

or question his authority to oversee federal program; secretary's involvement merely

official, titular and nominal and involves no significant federal interest); <u>Mayberry v.

Peninsula Psychiatric Hosps., Inc.</u>, 470 F. Supp. 1268, 1269 (E.D. Tenn. 1979) (even

though substantial federal HUD mortgage might be affected by fraud action against

mortgagors, HUD officials not accused of wrongdoing, validity of mortgage not

challenged, and no remedy sought against HUD secretary, so action not "against" federal

officer or agency for purposes of § 1442); <u>National Audubon Society v. Dep't of Water &

Power of the City of Los Angeles</u>, 496 F. Supp. 499, 504-506 (E.D. Cal. 1980) (causes of

action that might affect US's right to utilize fully its water right not removable because no

nexus between federal act and cause of action; even cause of action that might threaten

US's title to stream bed not removable because predicated upon alleged maintenance of

9

nuisance by another party, not by US; only cause of action against US by reason of activities of BLM and Forest Service provides removability);[2] <u>New Jersey v. Moriarity</u>, 268 F. Supp. 546, 554-66 (D.N.J. 1967) (suit for forfeiture of gambling proceeds and for escheat to state of forfeited funds not removable by IRS agent even though IRS asserted tax lien against same funds, because not suit against federal officer; neither damages nor injunctive relief sought against IRS agent).

The United States argues that the Federal Agency applied for the return flow credits under color of office, and that this act was undertaken by the Federal Agency as owner of the water right and authorizing agent for the use by the Ski Company.  It is true that the Federal Agency was involved in setting into motion the increase in return flow credits for snow making.  It filed, along with the Ski Company, the initial applications in 1993 seeking a 90.2% credit, and presumably it was involved in procuring the September 10, 1998 filing by the expert that provided the basis for approval of the 72% credit in April 1999.  However, even a broad reading of the petition and other pleadings in this case does not permit a view that SACC challenges any of these federal "acts."  It is only the April 1999 action of the State Engineer approving the increased return flow credits without giving notice to affected water users in the basin that is disputed.

The United States also argues that the effect of the relief would operate against the interests of the Federal Agency as the owner of the water right, and would interfere with

---

[2]  In <u>National Audubon</u>, because one of the four causes of actions was removable, the entire case was held to be removable, 496 F. Supp. at 509.

the public administration by interfering with the United States' state-approved use of its water right for federally authorized purposes.  The Forest Service has expressly authorized the use of its water right and the lands on which it is used by the Santa Fe Ski Company.  Use of National Forest lands for developed ski areas and construction of related facilities is a purpose expressly authorized under federal law and regulation.  *See* 16 U.S.C. § 497b and 36 C.F.R. § 251.56(b)(2) and (g).  Property interests of the United States are generally protected against state interference under the Property Clause of the United States Constitution.[3]  *See* <u>Kleppe v. New Mexico</u>, 426 U.S. 529, 539-40 (1976); <u>State of Minnesota by Alexander v. Block</u>, 660 F.2d 1240, 1249 (8th Cir. 1981). Obtaining water rights for a ski area is within the Forest Service's authority and congressional direction to manage National Forest lands for multiple use and sustained yield pursuant to 16 U.S.C. §§ 528-531, 1600-1614.  I accept all this as true, yet the case does not present a sufficiently substantial federal interest to justify § 1442 removal.

Here, SACC has not alleged any act by a federal officer or agency under color of office, nor has the state district court directed its writ of certiorari to the United States. No judgment in this case would expend itself on the public treasury of the United States, or either restrain the United States from acting or compel it to act.  SACC has made no challenge to any duty of a federal officer or agency to enforce federal law, and there is no

---

[3]  The Property Clause, Art. IV, § 3, cl. 2, provides:  "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States or of any particular State."

allegation of wrongdoing on the part of any federal officer or agency.  No remedy is

sought against the United States.  The mere fact that the Ski Company is leasing land

from the Federal Agency and using its water right does not provide removal protection

under § 1442.  There is no challenge to the Federal Agency's water right itself, or to the

use of the water for snow making by the Ski Company.  The only challenge is to the

authorization by the State Engineer of higher-than-normal return flow credits for the Ski

Company's snow making activities. This lawsuit involves the invocation of a state statute

for relief against a state official.  It involves no significant federal interest warranting

removal.


        NOW THEREFORE IT IS ORDERED that Respondent New Mexico State

Engineer's Motion to Remand should be and is hereby GRANTED.

        IT IS FURTHER ORDERED that this case is hereby remanded to the New

Mexico State Court, First Judicial District, Santa Fe County, New Mexico.

_____
UNITED STATES DISTRICT JUDGE


Counsel for Petitioners:  Steve Sugarman, Santa Fe, N.M. and Alletta d'Andelot Belin, LAND & WATER FUND OF THE ROCKIES, Santa Fe, N.M.

Counsel for Respondent:  D.L. Sanders, STATE ENGINEER'S OFFICE, Santa Fe, N.M.

Counsel for Real Party in Interest United States:  John W. Zavitz, US ATTORNEY'S OFFICE, Albuquerque, N.M.

Counsel for Real Party in Interest Santa Fe Ski Company:  Lester K. Taylor and Lisa D. Brown, NORDHAUS, HALTOM, TAYLOR, TARADASH & FRYE, Albuquerque, N.M.